IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MATTHEW S. B.,[1]

        Plaintiff,

                                  Civil Action 2:21-cv-2403
    v.                             Judge James L. Graham
                                    Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Matthew S. B., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his applications for

social security disability insurance benefits ("DIB") and supplemental security income ("SSI").

This matter is before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's Statement of Errors (ECF No. 16), the Commissioner's Memorandum in Opposition

(ECF No. 19), and the administrative record (ECF No. 9).  Plaintiff did not file a Reply.  For the

reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement

of Errors and **AFFIRM** the Commissioner's decision.

## I.  BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI in February 2019, alleging

that he has been disabled since January 24, 2017, due to human immunodeficiency virus, suicidal

ideations, cellulitis, methicillin-resistant staphylococcus aureus, acute hepatitis B, avascular

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

necrosis of bone of both hips, and pneumocystosis.  (R. at 177-86, 212.)  Plaintiff's applications were denied initially in May 2019 and upon reconsideration in August 2019.  (R. at 74-139.) Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 149-51.)  Plaintiff, who was represented by counsel, appeared and testified at a telephone hearing held on September 10, 2020.  (R. at 37-73.)  A Vocational Expert ("VE") also appeared and testified. (*Id.*)  Administrative law judge Deborah F. Sanders (the "ALJ") issued a partially favorable decision finding that Plaintiff was under a disability from January 24, 2017 through June 30, 2019, but not disabled within the meaning of the Social Security Act beginning July 1, 2019.  (R. at 12-36.)  The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-6.)  This matter is properly before this Court for review.

## II.   HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony and statements to the agency as follows:

> [Plaintiff] testified that he began more consistent compliance with his treatment recommendations and medication regimen early in 2019, in part due to his desire for surgical intervention on his hips.
>
> * * *
>
> [Plaintiff] reported being unable to engage in work activity due to a combination of his physical and mental conditions. [Plaintiff] testified that he is unable to work due to his diagnosis of human immunodeficiency virus/acquired immune deficiency syndrome (HIV/AIDS). He indicated that he was inconsistently compliant with medication after his initial diagnosis. [Plaintiff] indicated he started retaking his medications in 2019, with improvement in his CD4 counts, and was able to get surgery on his hips. He indicated that his hip replacement surgeries went well and is able to walk on his own, despite not being able to undergo rehabilitation services after his second hip replacement surgery due to COVID closures. [Plaintiff] initially reported no side effects from medication, but did note having loose stools. [Plaintiff] reported being able to sit for 45 minutes to an hour before having to get up and move around, can stand for about 35

2

minutes before having to sit, but indicated he could not alternate sitting and standing for 8 hours due to his hips and knees. [Plaintiff] indicated he can go up and down stairs, but will limit his going up and down stairs.

[Plaintiff] also reported a history of depression, but not wanting to participate in mental health treatment in the past, but taking medications prescribed by his primary care provider in the past.

[Plaintiff] testified that he lives with his mother, and reported relying on his brother, mother, or friends to take him around and does not use public transportation. [Plaintiff] endorsed being active in his church prior to a COVID-related closure. During a typical day, [Plaintiff] indicated he can bathe himself and go outside to his patio, but does not go to the store regularly, and provides care for his dog. He also stated he has return[ed] to church and has been going for the past couple of weeks, and was able to shop with his brother in a store a month ago.

(R. at 25-26 (internal citations omitted).)

### III.     MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's physical impairments as follows:

Notes in April 2019 showed [Plaintiff] had not been seen in almost a year with a CD4 of 44 (5%) and was encouraged to comply with ART. By July 2019, [Plaintiff] was noted as stable on Juluca and Prezcobix, with no compliance issues and his CD4 is up to 256[.] As of November 6, 2019, his CD4 /CD3 dual T helper was 301, above the low range at 266. [Plaintiff]'s weight also increased from a BMI of 18 in April 2019, to 19.53 as of January 27, 2020. Based on [Plaintiff]'s improvement in both his labs and weight, medical improvement as of July 1, 2019 is found. As noted above, [Plaintiff]'s earnings record reflects [Plaintiff] was recently hired as well, suggesting improvement in [Plaintiff]'s abilities such that he has been able to return to work.

* * *

On April 22, 2019, [Plaintiff] underwent a medical consultative evaluation with Travis Frantz, M.D., alleging hip pain associated with avascular necrosis, worse on the right than left, and AIDS managed by an infectious disease provider. [Plaintiff] reported periodic usage of crutches when his hip pain is too significant, stated he can stand for about 30 minutes at a time and can only walk 1-2 blocks, and is independent with home living. Physical examination as notable for a BMI of 18 based on a height of 66 inches and weight of 111 pounds, reduced shoulder range of motion, had full strength and sensation in the bilateral lower extremities without

focal neurological deficit or weakness, a negative bilateral straight leg raise, had decreased both external and internal rotation in his hips, particularly on the right hand side, and was able to ambulate around the room although he does have a Trendelenburg gait favoring the right hand side and is noticeably slower than an otherwise healthy 32-year-old individual should be. Imaging of the right hip showed deformity and sclerosis of the right femoral head consistent with advanced osteonecrosis and patchy sclerosis in the left femoral head that would suggest early osteonecrosis. Dr. Frantz diagnosed right hip pain and AIDS and opined: [Plaintiff] would best be suited for light work being required to stand no more than 30 minutes at a time without a rest; should stand no more than 3 hours total in an 8 hour work day; should be required to lift no more than 40 pounds infrequently and 30 pounds frequently; and should avoid any work environment which may put other employees or customers at risk due to the possible underlying communicable disease.

Infectious disease notes on July 3, 2019, showed [Plaintiff] continued to do well, with no compliance issues, and was stable on his regimen of Juluca and Precobix with no side effects. [Plaintiff's] viral load was down to 331 and CD4 up to 256. Emergency department notes on August 12, 2019, showed [Plaintiff] reported having slipped down approximately 12 stairs while carrying a laundry basket and having left hip and knee pain as a result. Physical examination showed tenderness in the bilateral hips and left knee, with imaging studies of bilateral hip revealing bilateral femoral head avascular necrosis with mild articular surface collapse noted bilaterally. [Plaintiff] was treated symptomatically, with an attempt to provide [Plaintiff] a walk[er] for home. Infectious disease follow[-]up on August 14, 2019, showed [Plaintiff] continued to do well overall, with viral load down to 219, which is essentially undetectable, and no contraindication to him having hip surgery with his number as is.

Primary care notes on September 5, 2019, showed reports of hip pain associated with avascular necrosis and needing to be cleared by infections disease prior to proceeding with operative intervention. Infectious disease notes in October 2019 reflected continued improvement in [Plaintiff's] viral load being "essentially undetectable" and reiterated that "from an HIV standpoint there is no contraindication to having hip surgery[.]" Continued use of Valacyclovir for suppression was ordered.

On December 5, 2019, [Plaintiff] underwent a right total hip arthroplasty. [Plaintiff] tolerated the procedure well, was provided a walker for post-surgical rehabilitation as well as a referral for home health assistance. Orthopedic notes on December 18, 2019, reflected [Plaintiff] doing well after undergoing a right total hip arthroplasty approximately 2 weeks prior. [Plaintiff] endorsed well-controlled pain and was ambulating well with the assistance of crutches. Physical examination showed a mild limp with a decreased stance phase on the operative extremity, flexion to 90 degrees with no pain, and 5/5 strength in the right lower extremity. Continued home therapy and exercises was advised, with weaning off Oxycodone as able, and

increasing activities as tolerated.

On December 27, 2019, [Plaintiff] initiated post-operative physical therapy, with notes that [Plaintiff] was able to ambulate into the clinic without an assistive device. Exam findings included abnormal gait pattern, impaired coordination, deconditioning, muscle weakness, impaired range of motion, impaired neuromuscular control, pain with movement, poor body mechanics, and abnormal posture. Eight sessions of physical therapy over four weeks [were] recommended. However, [Plaintiff] was discharged after five sessions, with failure to return and noted poor compliance with his home exercise program.

Infectious disease notes on January 15, 2020, showed [Plaintiff] doing well with a stable, low, and nearly undetectable viral load, having had a right hip replacement the month prior with no pain therein, and a left hip surgery planned for next month. On January 22, 2020, [Plaintiff] was seen in the emergency department for treatment of influenza, with a BMI of 20 noted, and physical examination showing [Plaintiff] moved all extremities purposefully, had grossly normal motor function, and normal sensory function.

Orthopedic notes on January 27, 2020, indicated [Plaintiff] was doing well, ambulating well with the assistances of crutches, and ready to proceed with his left total hip arthroplasty. Physical examination showed a mild limp with a decreased stance phase on the operative extremity, 90 degree flexion with no pain, no pain with leg roll of the hip, and 5/5 strength in the left lower extremity. On February 19, 2020, [Plaintiff] underwent a left total hip arthroplasty. [Plaintiff's] post-operative course was uneventful, with pain well controlled, and indications [Plaintiff] was ambulating well with physical therapy. [Plaintiff] was discharged with a referral for post-operative physical therapy.

Orthopedic follow up on March 10, 2020, showed [Plaintiff] doing well, with well controlled pain, and ambulating without the assistance of a walker/cane. Physical examination noted a mild limp with a decreased stance phase on the operative extremity, flexion to 90 degrees with no pain, no pain with leg roll of hip, and 5/5 strength in the left lower extremity. Continued physical therapy was advised.

(R. at 25-27 (internal citations omitted).)

## IV.    ADMINISTRATIVE DECISION

On September 28, 2020, the ALJ issued her decision.  (R. at 12-36.)  The ALJ found that

Plaintiff met the insured status requirements of the Social Security Act through March 31, 2022.

(R. at 20.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not

engaged in substantially gainful activity since January 24, 2017, the date Plaintiff became

disabled.  (*Id.*)  The ALJ found that from January 24, 2017 through June 30, 2019, the period

during which Plaintiff was under a disability, he had the following severe impairments:  human

immunodeficiency virus/acquired immune deficiency syndrome; hepatitis B; and adjustment

disorder with depressed mood.  (*Id.*)  The ALJ further found that from January 24, 2017 through

June 30, 2019, the period during which Plaintiff was disabled, the severity of his human

immunodeficiency virus/acquired immune deficiency syndrome met the criteria of section(s)

14.11 of 20 CFR Part 404, Subpart P, Appendix 1.  (R. at 20-21.)  The ALJ also found that

beginning July 1, 2019, Plaintiff had not had an impairment or combination of impairments that

meets or medically equals the severity of one of the listed impairments described in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  (R. at 22.)  The ALJ concluded Plaintiff was "disabled" from

January 24, 2017 through June 30, 2019, but that his disability ended on July 1, 2019, because of

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or
   equal the criteria of an impairment set forth in the Commissioner's Listing of
   Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant
   perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual
   functional capacity, can the claimant perform other work available in the national
   economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

medical improvement.[3] The ALJ found that the medical improvement that had occurred was related to the ability to work because Plaintiff no longer had an impairment or combination of impairments that met or medically equaled the severity of a listing. (R. at 25.) Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that, beginning July 1, 2019, [Plaintiff] has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: [Plaintiff] can stand and/or walk no more than 4 hours of an 8 hour workday; can occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] can perform simple, routine tasks; occasionally interact with coworkers but no tandem or shared tasks; can have occasional interaction with supervisors but no over the shoulder supervision; can have occasional interaction with the public but not in a customer service capacity; and can adapt to changes easily explained in advance.

(R. at 25.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform his past relevant work as a fast-food worker and fast-food manager since July 1, 2019. (R. at 30-31.) Relying on the VE's testimony, the ALJ concluded at step five that, beginning July 1, 2019, Plaintiff could perform other jobs that exist in significant numbers in the national economy. (R. at 31-32.) She therefore concluded that Plaintiff's disability ended on July 1, 2019. (R. at 32.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

---

[3] The finding that medical improvement had occurred was the result of an additional evaluation and determination, as set forth in 20 C.F.R. §§ 404.1594 and 416.994. (*See* R. at 18-20.)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial

evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r*

*of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the

Commissioner will not be upheld where the SSA fails to follow its own regulations and where

that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"

*Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.

2007)).

## VI.   ANALYSIS

Plaintiff sets forth three contentions of error:  (1) the ALJ erred in analyzing the

impairment of bilateral hip avascular necrosis at step two of the evaluation process; (2) the ALJ's

analysis of Travis Frantz, M.D.'s medical consultative evaluation was not based on substantial

evidence; and (3) the ALJ's analysis of a letter from Plaintiff's primary care provider James

8

Maurice Wellbaum II, M.D. did not utilize the correct legal standard and did not rely on substantial evidence.  (ECF No. 16 at PAGEID ## 913-921.)  In response, the Commissioner rejects all of Plaintiff's arguments.  (*See* ECF No. 19.)  First, the Commissioner argues that as for the ALJ's step two argument, "the real issue is not whether individual impairments are severe, but whether the ALJ considered the functional limitations resulting from all of [Plaintiff's] impairments beyond step two."  (*Id.* at PAGEID # 933 (internal citation omitted).)  To this end, the Commissioner argues that the ALJ "adequately considered Plaintiff's bilateral hip necrosis, even if she did not classify it as a severe impairment at step two."  (*Id.* at PAGEID ## 933-934.)  Next, the Commissioner argues that under the new regulatory framework for evaluating medical opinions, the ALJ properly evaluated Dr. Frantz's opinion and Dr. Wellbaum's letter.  (*Id.* at PAGEID ## 935-942.)  Plaintiff did not file a Reply, so the briefing is ripe for judicial review. The Court will address each of Plaintiff's arguments in turn.

A.      **The ALJ's Step Two Analysis**

Regarding Plaintiff's first argument, the Undersigned finds that Plaintiff is mistaken that the ALJ's failure to recognize Plaintiff's bilateral hip avascular necrosis as a "severe" impairment at step two of the evaluation process constitutes reversible error.  As the Court of Appeals for the Sixth Circuit and this Court have observed several times, step two of the evaluation process is merely meant to "screen out totally groundless claims," and it is well settled that where an ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two '[does] not constitute reversible error.'"  *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))); *see also Rosshirt v. Comm'r of Soc. Sec.*, No.

2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug. 11, 2020) ("**Even assuming that the ALJ should have discussed plaintiff's alleged [impairment] at step two, any error from this omission was harmless**. Step two is the means by which the Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.]'") (emphasis added; internal quotations and citations omitted).

Plaintiff's argument is immediately undercut by his concession that the ALJ "***does appear to have considered the impact of [Plaintiff's] hip impairment*** despite her non-severity finding." (ECF No. 16 at PAGEID # 913 (emphasis added).)  To that end, even if the Court agreed with Plaintiff (which the Undersigned does not) that the ALJ should have found Plaintiff's hip impairment to be "severe" for purposes of the step two analysis, the ALJ's error would be nothing more than harmless, because the ALJ properly considered Plaintiff's hip impairment in crafting Plaintiff's RFC.  "In other words, Plaintiff's argument 'raises a distinction without a difference . . . .'"  *Robin B. v. Commisioner of Soc. Sec.*, No. 2:21-CV-96, 2022 WL 537576, at *4 (S.D. Ohio Feb. 23, 2022) (quoting *Fresquez v. Comm'r of Soc. Sec.*, No. 1:18-cv-114, 2019 WL 1440344 at *1 (S.D. Ohio Mar. 31, 2019) (declining to apply a different harmless-error analysis when the ALJ did not list plaintiff's chronic fatigue syndrome as a medically determinable impairment at step two yet considered it nonetheless in the RFC)).  This ends the step two analysis which Plaintiff puts before the Court.

The Undersigned also rejects Plaintiff's argument that the ALJ's RFC is not supported by substantial evidence because the ALJ relied on seven false "premises" regarding Plaintiff's hip impairment.  (ECF No. 16 at PAGEID ## 914-918.)  First, the Undersigned notes that this argument amounts to nothing more than a disagreement, albeit a multi-faceted one, with the ALJ's factual findings.  That is not the lens through which the Court reviews the ALJ's decision

for substantial evidence. *Douglas v. Comm'r of Soc. Sec.*, 832 F. Supp. 2d 813, 823 (S.D. Ohio 2011) ("Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.") (citing *Rogers*, 486 F.3d at 241).  Nor is it the Court's job to find reversible error with the ALJ's decision if alternative, or even opposite, findings could have been reached. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted).  Rather, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers*, 582 F.3d at 651 (quoting *Rogers*, 486 F.3d at 241).

Here, the ALJ noted that Plaintiff's "most significant physical hurdle related to treatment of bilateral avascular necrosis of the hips, which necessitated surgical intervention," but the ALJ also cited substantial evidence from the record which supported the ALJ's findings that (a) Plaintiff's hip impairment was not "severe" and (b) Plaintiff's hip impairment was not disabling. (R. at 28.)  Specifically, the ALJ noted that Plaintiff's "own testimony and the record reflects only intermittent usage of any assistive devices for ambulation."  (*Id.*; *see also* R. at 25, 27 (citing R. at 853).)  The ALJ cited numerous medical records which confirmed that Plaintiff "was able to ambulate . . . without an assistive device" and had "no pain" within about six weeks after his right total hip arthroplasty, notwithstanding the fact that Plaintiff was discharged from his post-operative physical therapy due to "poor compliance with his home exercise program." (R. at 27 (citing R. at 601, 773-774, 782).)  The ALJ then also cited numerous medical records which confirmed that after Plaintiff's left total hip arthroplasty, his "post-operative course was

uneventful," he was "ambulating well with physical therapy," and within about six weeks he was again "doing well, with controlled pain, and ambulating without the assistance of a walker/cane." (*Id.* (citing R. at 729, 740).) The ALJ also repeatedly noted that Plaintiff "was recently hired, suggesting [Plaintiff] has been able to return to some work activity." (R. at 25 (citing R. at 195), 28 (same).)

Notwithstanding the ALJ's step two finding that Plaintiff's hip impairment was not "severe," the ALJ still considered the record evidence and "found a reduced range of light exertion work [was] supported" by Plaintiff's condition. (R. at 30.) In reaching this conclusion, the ALJ stated that Plaintiff "reported intermittent use of an assistive device during the period at issue and prior to his hip surgical interventions . . . [but] despite lack of access to post-operative physical therapy, [Plaintiff] was noted as doing well, walking without an assistive device, and was even recently hired for work." (*Id.*) As set forth above, each of these conclusions was supported by substantial evidence.

Plaintiff is therefore incorrect to suggest that "the ALJ's reasoning as to this impairment is not based on substantial evidence." (ECF No. 16 at PAGEID # 917.) Rather, the ALJ adequately acknowledged and discussed Plaintiff's hip impairment, both before and after surgical intervention, and the ALJ analyzed the effect those symptoms had on how she devised Plaintiff's RFC, supporting her decision with substantial evidence from the record. *Rosshirt*, 2020 WL 4592393 at *3. Accordingly, Plaintiff's first assignment of error is not well taken.

**B.    The ALJ's Analysis of Dr. Frantz's Opinion and Dr. Wellbaum's Letter**

Plaintiff also argues that the ALJ incorrectly evaluated the evidence from consultative examiner Travis Frantz, M.D. and Plaintiff's primary care provider James Wellbaum, M.D. (ECF No. 16 at PAGEID ## 918-921.) First, Plaintiff believes that the ALJ erred by highlighting

12

that "Plaintiff's intermittent use of assistive devices during the period at issue and prior to his hip surgical interventions" was inconsistent with Dr. Frantz's opinion.  Plaintiff further contends that "the fact that [Plaintiff] did not consistently use an assistive device, although not irrelevant, is not substantial evidence in support of the finding that Dr. Frantz's opinion was unpersuasive."  (*Id.* at PAGEID ## 918-919.)  Next, Plaintiff submits that the ALJ erred by finding that Dr. Wellbaum's "opinion as to whether [Plaintiff] can work is on an issue reserved to the Commission and therefore is neither inherently valuable or persuasive."  (*Id.* at PAGEID ## 919-921.)  Plaintiff submits that Dr. Wellbaum "simply opined that [Plaintiff's] hip impairment causes significant pain, and that that significant pain impacts [Plaintiff's] ability to perform significant amounts of standing/sitting/walking."  (*Id.* at PAGEID # 920.)  Plaintiff therefore concludes that "the ALJ has committed legal error in declining to evaluate [Dr. Wellbaum's] opinion for this reason."  (*Id.*)

Plaintiff's arguments are not well taken.  As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  An ALJ must assess a claimant's RFC based on all of the relevant evidence in a claimant's case file.  *Id*.  The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)-(5).  Objective medical evidence is defined as "medical signs, laboratory findings, or both."  20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1).  "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical

---

[4] As discussed in depth below, Plaintiff's application was filed after March 27, 2017.  (R. at 177-186.)  Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

opinion, including judgments about the nature and severity of your impairments, your medical

history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20

C.F.R. §§ 404.1513(a)(3); 416.913(a)(3).  "Evidence from nonmedical sources is any

information or statement(s) from a nonmedical source (including you) about any issue in your

claim." 20 C.F.R. §§ 404.1513(a)(4); 416.913(a)(4).  "Medical opinion" and "prior

administrative medical finding" are defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source
> about what you can still do despite your impairment(s) and whether you have one
> or more impairment-related limitations or restrictions . . . .

>> (i) (A) Your ability to perform physical demands of work activities, such
>> as sitting, standing, walking, lifting, carrying, pushing, pulling, or other
>> physical functions (including manipulative or postural functions, such as
>> reaching, handling, stooping, or crouching);

>> (B) Your ability to perform mental demands of work activities, such as
>> understanding; remembering; maintaining concentration, persistence, or
>> pace; carrying out instructions; or responding appropriately to supervision,
>> co-workers, or work pressures in a work setting;

>> (C) Your ability to perform other demands of work, such as seeing,
>> hearing, or using other senses; and

>> (D) Your ability to adapt to environmental conditions, such as temperature
>> extremes or fumes . . . .

> * * *

> (5) Prior administrative medical finding. A prior administrative medical finding is
> a finding, other than the ultimate determination about whether you are disabled,
> about a medical issue made by our Federal and State agency medical and
> psychological consultants at a prior level of review (see § 416.1400) in your current
> claim based on their review of the evidence in your case record, such as:

>> (i) The existence and severity of your impairment(s);

>> (ii) The existence and severity of your symptoms;

>> (iii) Statements about whether your impairment(s) meets or medically
>> equals any listing in the Listing of Impairments in Part 404, Subpart P,
>> Appendix 1; . . . .

14

(v) . . . your residual functional capacity;

(vi) Whether your impairment(s) meets the duration requirement; and

(vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. §§ 404.1513(a)(2)(i), (5); 416.913(a)(2)(i), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations *require* an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. *Id.* If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when medical sources provide multiple opinions

15

or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated

each opinion or finding individually but must instead articulate how he considered the opinions

or findings from that source in a single analysis using the five factors described above.  20

C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).  Finally, the regulations explain that the SSA is not

required to articulate how it considered evidence from non-medical sources.  20 C.F.R. §§

404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate

the "supportability" and "consistency" of medical source opinions and prior administrative

findings:

> (1)  Supportability. The more relevant the objective medical evidence and
> supporting explanations presented by a medical source are to support his or her
> medical opinion(s) or prior administrative medical finding(s), the more persuasive
> the medical opinions or prior administrative medical finding(s) will be.
>
> (2)  Consistency. The more consistent a medical opinion(s) or prior administrative
> medical finding(s) is with the evidence from other medical sources and nonmedical
> sources in the claim, the more persuasive the medical opinion(s) or prior
> administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2).  In practice, this means that the

"supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection

procedures/analysis, and other objective medical evidence."  *Reusel v. Comm'r of Soc. Sec.*, No.

5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996

SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. §

404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. §

404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and

"consistency" for purposes of the post-March 27, 2017 regulations)).

16

Against that backdrop, the ALJ provided the following discussion and analysis of Dr. Frantz's April 22, 2019 consultative opinion and Dr. Wellbaum's September 17, 2019 letter:

> On April 22, 2019, [Plaintiff] underwent a medical consultative evaluation with Travis Frantz, M.D., alleging hip pain associated with avascular necrosis, worse on the right than left, and AIDS managed by an infectious disease provider. [Plaintiff] reported periodic usage of crutches when his hip pain is too significant, stated he can stand for about 30 minutes at a time and can only walk 1-2 blocks, and is independent with home living. Physical examination as notable for a BMI of 18 based on a height of 66 inches and weight of 111 pounds, reduced shoulder range of motion, had full strength and sensation in the bilateral lower extremities without focal neurological deficit or weakness, a negative bilateral straight leg raise, had decreased both external and internal rotation in his hips, particularly on the right hand side, and was able to ambulate around the room although he does have a Trendelenburg gait favoring the right hand side and is noticeably slower than an otherwise healthy 32-year-old individual should be. Imaging of the right hip showed deformity and sclerosis of the right femoral head consistent with advanced osteonecrosis and patchy sclerosis in the left femoral head that would suggest early osteonecrosis. Dr. Frantz diagnosed right hip pain and AIDS and opined: [Plaintiff] would best be suited for light work being required to stand no more than 30 minutes at a time without a rest; should stand no more than 3 hours total in an 8 hour work day; should be required to lift no more than 40 pounds infrequently and 30 pounds frequently; and should avoid any work environment which may put other employees or customers at risk due to the possible underlying communicable disease.

> ***

> The undersigned has also considered the medical consultative examiner opinion from Dr. Frantz, who opined: [Plaintiff] would best be suited for light work being required to stand no more than 30 minutes at a time without a rest; should stand no more than 3 hours total in an 8 hour work day; should be required to lift no more than 40 pounds infrequently and 30 pounds frequently; and should avoid any work environment which may put other employees or customers at risk due to the possible underlying communicable disease. **The undersigned has found this assessment unpersuasive. Consistent with the evidence of record including the opinions of the State agency medical consultative examiners, the undersigned has found a reduced range of light exertion work supported. As noted above, [Plaintiff] reported intermittent use of an assistive device during the period at issue and prior to his hip surgical interventions. Thereafter, despite lack of access to post-operative physical therapy, [Plaintiff] was noted as doing well, walking without an assistive device, and was even recently hired for work.**

> ***

17

In correspondence dated September 17, 2019, [Plaintiff's] primary care provider James Wellbaum, M.D., noted [Plaintiff] had been diagnosed with bilateral avascular necrosis of the hips, which causes significant pain, and prevents him from performing activities of any prolonged duration with his lower extremities. **Dr. Wellbaum noted that [Plaintiff] was being evaluated by orthopedics for definitive therapy with surgery and until that time he did not believe that [Plaintiff] could engage in any consistent or significant work that involves standing/sitting/walking. The undersigned notes that the opinion as to whether [Plaintiff] can work is on an issue reserved to the Commissioner and therefore is neither inherently valuable or persuasive. Therefore, the undersigned did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c)).**

(R. at 26, 30. (internal citations omitted; emphasis added).)

The Court finds no error with the ALJ's analysis of either Dr. Frantz's opinion or Dr. Wellbaum's letter.  First, as to Dr. Frantz's opinion, the ALJ's conclusion properly implicates both the "supportability" and "consistency" factors.  Specifically, the ALJ's discussion makes clear that Dr. Frantz's opinion was not supported by his own observations that Plaintiff "reported periodic usage of crutches when his hip pain [was] too significant" and "was able to ambulate around the room," and that Dr. Frantz's opinion was not consistent with other medical evidence of record which demonstrated that Plaintiff "reported intermittent use of an assistive device during the period at issue and prior to his hip surgical interventions" and that Plaintiff "was even recently hired for work." (*Id.*)

While this ends the inquiry, the Undersigned must also expressly reject Plaintiff's argument that "the fact that [Plaintiff] did not consistently use an assistive device . . . is not substantial evidence." (ECF No. 16 at PAGEID # 919.)  As set forth above, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip*, 25 F.3d at 286).  While the use of an assistive device may not always be relevant, the Undersigned finds that it plainly is relevant here.  Accordingly,

18

the Undersigned does not hesitate in finding that the fact that Plaintiff did not consistently use an assistive device constitutes substantial evidence on which the ALJ properly relied.  *See Foreman v. Comm'r of Soc. Sec.*, No. 2:20-CV-2171, 2021 WL 4236691, at *7 (S.D. Ohio Sept. 17, 2021) ("[T]he record contains substantial evidence that Plaintiff can ambulate without an assistive device."); *see also, e.g., Parr v. Comm'r of Soc. Sec.*, No. CV 20-13173, 2021 WL 5370483, at *2 (E.D. Mich. Nov. 18, 2021) ("[T]he magistrate judge properly concluded that the ALJ's decision is supported by substantial evidence, including the consistent notations of [Plaintiff's] physicians that he could walk normally without any assistive device."); *Goffnett v. Comm'r of Soc. Sec.*, No. CV 20-11706, 2021 WL 4272546, at *4 (E.D. Mich. Sept. 21, 2021) ("There is substantial evidence in Plaintiff's treatment notes that she could ambulate outside on uneven surfaces . . . without loss of balance without using her assistive device.") (internal quotation marks and citations omitted).

As for the ALJ's consideration of Dr. Wellbaum's letter in the record, the Undersigned again finds no error.  Rather, the Undersigned finds that Plaintiff's argument is premised on outdated regulations which are no longer in effect.  Specifically, despite Plaintiff's argument that "[t]his issue is initially analyzed under the auspices of 40 C.F.R. § 404.1527(d)," ECF No. 16 at PAGEID # 920, the Undersigned notes that the cited regulation expressly only addresses the evaluation of claims "filed before March 27, 2017."  40 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017.").  Plaintiff, however, filed his claim on February 5, 2019, *see* R. at 177-186.  Plaintiff's claim, therefore, is instead governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

19

Under the new regulations, statements that a claimant is "able to perform regular or continuing work" are expressly designated as "[e]vidence that is inherently neither valuable nor persuasive."  20 C.F.R. § 404.1520b(c)(3)(i).  As such, the regulations provide that the ALJ "will not provide any analysis about how [they] considered such evidence in our determination or decision."  *Id.*  And looking at Dr. Wellbaum's letter in its entirety, it is clear to the Undersigned that it falls under this category.

> [Plaintiff] is currently under my medical care. I have been asked to provide documentation in regards to his functional status. He currently has been diagnosed with bilateral avascular necrosis of the hips. This particular medical problem causes significant pain that prevents him from performing activities of any prolonged duration with his lower extremities. He is currently being evaluated by orthopedics for definitive therapy with surgery and until that time **I do not believe that he could engage in any consistent or significant work that involves standing/sitting/walking**.

(R. at 560 (emphasis added).)  This is exactly the type of statement that the new regulations declare to be "inherently neither valuable nor persuasive."  As a result the Undersigned finds no error in the ALJ's analysis.  To the contrary, the Undersigned finds that the ALJ properly identified that Dr. Wellbaum was commenting on an issue reserved to the Commissioner, and she appropriately declined to discuss the comment any further, consistent with the applicable regulations.  Accordingly, Plaintiff's second and third assignments of error are not well taken.

## VII.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: May 12, 2022                          /s/ *Elizabeth A. Preston Deavers*
                                            **ELIZABETH A. PRESTON DEAVERS**
                                            **UNITED STATES MAGISTRATE JUDGE**


21